**TERRE HAUTE REGIONAL HOSPITAL, INC., Defendant–Appellant,**

v.

**Loretta I. BASDEN, Plaintiff–Appellee.**

No. 61A01–8802–CV–43.

Court of Appeals of Indiana, First District.

June 28, 1988.

John D. Nell, Julie L. Michaelis, Wooden, McLaughlin & Sterner, Indianapolis, for defendant-appellant.

Henry J. Price, Mary A. Findling, Price & DeLaney, Indianapolis, Eric A. Frey, Frey, Hunt, Hassler & Lorenz, Terre Haute, for plaintiff-appellee.

RATLIFF, Chief Judge.

## STATEMENT OF THE CASE

Terre Haute Regional Hospital, Inc. (hereinafter THRH) appeals from the Parke Circuit Court's order compelling THRH to respond to Loretta I. Basden's discovery requests. We reverse in part, and affirm in part.

## FACTS

In May of 1979, Dr. Manuel A. Cacdac performed extensive lumbar surgery on Loretta I. Basden at THRH. In August of 1981, Dr. Cacdac again operated on Basden. Basden sued Dr. Cacdac and that suit is pending in the Clay Circuit Court. On November 11, 1982, Basden filed the present action against the Hospital Corporation of America, and THRH. On October 12, 1987, Basden filed a Motion to Compel. Basden requested that the trial court order THRH to answer interrogatories and to produce requested documents. Basden requested also that William Giermak, Hospital Administrator for THRH, be directed to answer oral deposition questions he refused to answer. THRH and Giermak had objected previously to the specific discovery requests and challenged the Motion to Compel. THRH and Giermak argued that Basden's requested discovery sought information: (a) that involved communications and materials prepared by and for THRH's peer review committees, and accordingly was confidential and privileged material under Indiana's Peer Review Statute, Indiana Code section 34-4-12.6-1 et seq.; or (b) that involved events that occurred after Basden's 1981 surgery and that concerned medical procedures that were not similar to Basden's surgeries, and accordingly, was irrelevant and not reasonably calculated to lead to the discovery of admissible evidence in violation of Indiana Rules of Procedure, Trial Rule 26(B). Both parties submitted briefs and the trial court held a hearing on Basden's Motion to Compel. The trial court granted Basden's motion and, after rephrasing the original order, directed THRH and Giermak to provide answers to the interrogatories and deposition questions, and to produce the requested documents. THRH obtained a certification from the trial court, and brought this interlocutory appeal challenging the grant of Basden's Motion to Compel.

## ISSUES

THRH raised three (3) issues which this court has combined and rephrased into the following two (2) issues:

1. Whether the trial court erred by ordering THRH and Giermak to comply with Basden's discovery requests which sought

information that involved communications and materials compiled for and by THRH's peer review committees during investigations of the practices of health care providers?

2. Whether the trial court erred by ordering THRH to provide information (a) regarding events which occurred after Basden's surgery, and (b) regarding procedures which were not substantially similar to the procedures performed on Basden?

## DISCUSSION AND DECISION

*Issue One*

■ THRH argues first that the trial court's order improperly directs THRH and Giermak to provide Basden with information that is confidential and privileged under Indiana's Peer Review Statute, Indiana Code section 34–4–12.6–1 et seq. Indiana Code section 34–4–12.6–2 provides in part, as follows:

"Confidentiality and privilege.—(a) All proceedings of a peer review committee shall be confidential, and all communications to a peer review committee shall be privileged communications to the peer review committee. Neither the personnel of a peer review committee nor any participant in a proceeding therein shall reveal any content of communications to, or the records or determination of, a peer review committee outside the peer committee. However, the governing board of a hospital or professional health care organization may disclose the final action taken with regard to a professional health care provider without violating the provisions of this section. Except as otherwise provided in this chapter, no person who was in attendance at any such peer review committee proceeding shall be permitted or required to disclose any information acquired in connection with or in the course of such proceeding, or to disclose any opinion, recommendation, or evaluation of the committee or of any member thereof. Information otherwise discoverable or admissible from

original sources is not to be construed as immune from discovery or use in any proceeding merely because it was presented during proceedings before such peer review committee, nor is a member, employee, or agent of such committee or other person appearing before it to be prevented from testifying as to matters within his knowledge and in accordance with the other provisions of this chapter, but the witness cannot be questioned about this testimony or other proceedings before such committee or about opinions formed by him as a result of committee hearings....

"(c) Except in cases of required disclosure to the professional health care provider under investigation, no records or determinations of, or communications to, a peer review committee shall be:

(1) Subject to subpoena or discovery; or

(2) Admissible in evidence;

in any judicial or administrative proceeding, including a proceeding under IC 16–9.5–10, without a prior waiver executed by the committee. Except in cases as authorized in this chapter, the evidentiary privileges created by this section shall be invoked by all witnesses and organizations in all judicial and administrative proceedings unless the witness or organization first has a waiver of the privilege executed in writing, on behalf of the peer review committee holding the privilege, by its chairman, vice chairman, or secretary."

This section clearly and unambiguously prohibits the disclosure of the determinations of, and communications to a peer review committee, subject to specified exceptions. In the present case, THRH objected to several of Basden's interrogatories and requests for production on the ground that the information was confidential and privileged under the Peer Review Statute. Record at 20–64; Interrogatory Nos. 55–58, 63(d), 68–72, 79; Request for Production Nos. 9–11, 15, 20, 25. Giermak objected to several deposition questions on

the same basis. Record at 160. These objections were proper because the discovery requests sought disclosure of information involving the proceedings and determinations of a peer review committee and information involving communications to a peer review committee. Therefore, the trial court abused its discretion by ordering THRH and Giermak to respond to those interrogatories, requests for production, and deposition questions which were objected to on the basis that they sought confidential and privileged materials in violation of Indiana's Peer Review Statute.

■ Basden advances five (5) arguments that suggest that the confidentiality and privilege section is inapplicable to the present case.[1] First, Basden argues that the confidentiality and privilege provided to peer review proceedings determinations and communications is limited by a "good faith" requirement, and relies upon the wording found in Ind.Code § 34–4–12.6–3, which provides in part as follows:

"Immunity.—(a) There shall be no liability on the part of, and no action of any nature shall arise against, the personnel of a peer review committee for any act, statement made in the confines of the committee, or proceeding thereof made in good faith in regard to evaluation of patient care as that term is defined and limited in section 1(b) [34–4–12.6–1(b)] of this chapter.

"(b) Notwithstanding any other law, a peer review committee, an organization, or any other person who, in good faith and as a witness or in some other capacity, furnishes records, information, or assistance to a peer review committee that is engaged in:

(1) The evaluation of the qualifications, competence, or professional conduct of a professional health care provider; or

(2) The evaluation of patient care; is immune from any civil action arising from the furnishing of the records, information, or assistance, unless the person knowingly furnishes false records or information.

"(c) The personnel of a peer review committee shall be immune from any civil action arising from any determination made in good faith in regard to evaluation of patient care as that term is defined and limited in section (b) of this chapter.

"(d) No restraining order or injunction shall be issued against a peer review committee or any of the personnel thereof to interfere with the proper functions of the committee acting in good faith in regard to evaluation of patient care as that term is defined and limited in section 1(b) of this chapter."

Basden concludes that since this section limits the immunity afforded under the Act, the legislature also intended to limit and create an exception to the confidentiality and privilege protection provided in I.C. § 34–4–12.6–2. Basden's conclusion is mistaken. A similar conclusion was rejected by the Colorado Supreme Court in *Franco v. District Court* (1982), Colo., 641 P.2d 922. In *Franco*, the Colorado Supreme Court, in interpreting a peer review statute that contains similar privilege and immunity sections, opined as follows:

"The petitioner alternatively argues that the peer review privilege, to the extent applicable to his pending suit, should be limited to good faith actions by committee members. We find this argument unpersuasive.

"A statute must be construed 'in order that the true intent and meaning of the general assembly may be fully carried out.' Section 2–4–212, C.R.S.1973. Although section 12–43.5–103(2) restricts the immunity granted to committee members to their good faith actions within the scope of their committee functions, there is no such restrictive language in section

---

1. This court notes that Basden's arguments in essence request us to rewrite the Peer Review Statute. This we cannot do. The amendment and revision of statutes fall within the province of the Legislature.

12–43.5–102(3)(e), which creates the peer review privilege. That the legislature was aware of its right to limit the *privilege* to good faith actions is obvious from the statutory *immunity* limitations. We believe the legislature deliberately omitted any good faith limitation in the peer review privilege in order to avoid any chilling effect on the review committee's statutory duty 'to openly, honestly and objectively study and review the conduct of practice by members of the profession.' Section 12–43.5–101(1), C.R.S.1973 (1978 Repl.Vol. 5). To engraft a good faith limitation on the peer review privilege would have the inevitable effect of derogating from the quality of the peer review process."

*Franco* 641 P.2d at 930–31. This court agrees with the reasoning of the Colorado Supreme Court, and concludes that Indiana's legislature, like Colorado's, did not intend to limit the confidentiality and privilege extended to peer review proceedings, determination and materials in I.C. § 34–4–12.6–2. Therefore, the information that THRH and Giermak refused to disclose based upon the confidentiality and privilege protection afforded in the Peer Review Statute was not subject to disclosure due to lack of good faith on the part of the peer review committee or the participants to the investigation.

■ Basden argues second that the Peer Review Statute does not apply because she alleged fraud on the part of THRH and its peer review committees. Although Basden notes correctly that a privilege may not be invoked to shield criminal or fraudulent conduct, *Green v. State* (1971), 257 Ind. 244, 274 N.E.2d 267, a party must first make a *prima facie* showing that a crime or fraud occurred before a confidential communication will lose its privilege protection. *In re Sealed Case* (D.C.Cir.1985), 754 F.2d 395, 399; *Koenig v. Int'l. Systems and Controls Corp. Securities Litigation* (5th Cir.1982), 693 F.2d 1235, 1242; *United States v. Bob* (2nd Cir.1939), 106 F.2d 37, 40; *Stauffer Chemical Co. v. Monsanto*

*Co.* (E.D.Mo.1985), 623 F.Supp. 148, 152; *Coleman v. American Broadcasting Companies, Inc.* (D.D.C.1985), 106 F.R.D. 201, 207. The mere assertion of fraud is not enough to preclude application of the privilege. *In re Sealed Case*, 754 F.2d at 399; *Bob*, 106 F.2d at 40; *Coleman*, 106 F.R.D. at 209. An action for and the elements of fraud have been defined as follows:

"Notwithstanding the lack of an exact legal definition, the elements of a cause of action in fraud are well established: To sustain an action for fraud it must be proven by a preponderance of the evidence that a material representation of a past or existing fact was made which was untrue and known to be untrue by the party making it, or else recklessly made, and that another party did in fact rely on the representation and was induced thereby to act to his detriment."

*Plymale v. Upright* (1981), Ind.App., 419 N.E.2d 756, 760.

Basden has not established a *prima facie* showing of fraud. No misrepresentation of fact by THRH or its peer review committee has been shown to exist. At best, Basden has alleged that THRH expressed an erroneous opinion that Dr. Cacdac was qualified to perform surgery. An expression of an opinion will not support an action for fraud. *Burras v. Canal Constr. and Design Co.* (1984), Ind.App., 470 N.E. 2d 1362, 1368; *see also, Jeffcoat v. Phillips* (1976), Tex.Civ.App., 534 S.W.2d 168, 171–72. Therefore, Basden's crime/fraud argument does not support the denial of the peer review privilege.

■ Basden argues third that the Peer Review Statute does not apply to the present type of case. Basden is mistaken. The statute expressly provides that the privilege applies "in any judicial or administrative proceeding." I.C. § 34–4–12.6–2(c).

Basden argues fourth that the court should apply a balancing test in determining whether to apply the peer review privilege. Basden suggests that a privilege should not be applied when a party needs

the information and shows that the need for truth outweighs the need for confidentiality. Basden premises her balancing test argument on *Ernst and Ernst v. Underwriters Nat'l. Assurance Co.* (1978), 178 Ind.App. 77, 381 N.E.2d 897 and several federal cases, all of which are inapposite to the present case.[2] Basden misapplies *Ernst* and her argument fails.

In *Ernst*, the Indiana Court of Appeals examined the scope of the accountant/client privilege found in Indiana Code section 25-2-1-23. *Ernst* 178 Ind. App. at 81, 381 N.E.2d at 899. The court noted Wigmore's four (4) part test,[3] which is used to justify the granting of a privilege, and determined that Ernst and Ernst's interpretation of the accountant/client privilege did not meet this test. *Id.* 178 Ind.App. at 85, 381 N.E.2d at 902. Although *Ernst* referred to Wigmore's test, contrary to Basden's interpretation, *Ernst* does not stand for the proposition that a balancing test must be used to determine the applicability of a privilege. Rather, *Ernst* stands for the proposition that a statutory privilege must be limited to its purpose. *Id.* 178 Ind.App. at 86, 381 N.E.2d at 902. As stated in *Ernst,*

> "Thus privileges do not exist in a vacuum. They are enacted to foster some relationship or protect some interest that is believed to be of sufficient social importance to justify the sacrifice of relevant evidence to the fact finding process. In analyzing the nature and scope of any statutorily created privilege, the first step is to determine the specific interest or relationship that the privilege seeks to foster. Only by doing this can a specific claim of privilege be evaluated against the principle that the public is entitled to every person's evidence."

*Id.* The *Ernst* court concluded that the purpose of the accountant/client privilege was to protect the welfare of the client, and was personal to the client, not the accountant. *Id.* 178 Ind.App. at 89, 381 N.E.2d at 904.

■ In the present case, the purpose of the peer review privilege is to foster an effective review of medical care. An effective review requires that all participants to a peer review proceeding communicate candidly, objectively, and conscientiously. Absent the protection of a privilege, the candor and objectivity of peer review communications and the effectiveness of the peer review process would be hindered. Thus, the peer review privilege provides protection by granting confidentiality to all communications, proceedings, and determinations connected with a peer review process. Thus, unlike the accountant/client privilege which is personal to the client, the peer review privilege is general in nature and if personal to anyone or anything is personal to the peer review committee and its proceedings. Accordingly, since Basden's discovery sought information that falls within the shielding purpose and scope of the peer review statute, the protection of confidentiality applies and bars disclosure. If Basden were allowed to strip away the protection afforded by the peer review privilege based upon the balancing argument, the purpose of the privilege would be thwarted. Therefore, this court rejects Basden's balancing argument.

2. The federal cases Basden cites to all involve federal causes of action. The Federal Rules of Procedure were used, specifically Rule of Evidence 501. Indiana's Rules were not applied, specifically the peer review privilege rule. Therefore, the federal cases Basden relies upon are inapposite and do not support the proposition that Indiana uses a balancing of interests test before applying a privilege.

3. Wigmore's four (4) part test provides as follows:
 "(1) The communications must originate in a confidence that they will not be disclosed.

"(2) This element of confidentiality must be essential to the full and satisfactory maintenance of the relation between the parties.
 "(3) The relation must be one which in the opinion of the community ought to be sedulously fostered.
 "(4) The injury that would inure to the relation by the disclosure of the communications must be greater than the benefit thereby gained for the correct disposal of litigation."
8 J. Wigmore, Evidence, § 2285 (McNaughton rev. ed. 1961) (emphasis omitted).

Basden argues last that THRH has waived the peer review privilege. Basden suggests that since some of the peer review communications (*i.e.*, materials prepared for the peer review proceedings) may have been viewed outside the investigatory proceeding, the privilege was waived. Again Basden's argument fails. The Peer Review Statute provides that waiver of the peer review privilege can be effectuated only by written waiver. I.C. § 34–4–12.6–2(b) and (c). THRH did not execute a written waiver. Therefore, the peer review privilege applied, and the trial court erred by ordering THRH and Giermak to produce information that was protected from disclosure under the peer review statute.[4]

*Issue Two*

THRH argues next that the trial court erred by ordering compliance with Basden's discovery requests which were objected to on the ground that the information sought was not relevant and not reasonably calculated to lead to the discovery of admissible evidence as provided for in Indiana Rules of Procedure, Trial Rule 26(B)(1). The discovery requests objected to on this basis were Request for Production Nos. 12, 21–24, and Interrogatory Nos. 36, 60–62 and 73–78. THRH argued that the information sought was not within the scope of discoverable materials under Trial Rule 26(B) because either (a) the discovery requested information as to events which occurred after Basden's last surgery, or (b) the discovery requested information as to procedures that were not similar to those performed on Basden. THRH argues that Basden should be limited to the discovery of information as to events which occurred prior to Basden's 1981 surgery, and as to procedures that were substantially similar to her surgeries because any information outside these limits would be irrelevant to Basden's suit and not reasonably calculated to lead to the discovery of admissible evidence. THRH is mistaken. Although Trial Rule 26(B)(1) limits the scope of discovery to relevant information and materials, relevance is broadly defined. *Cigna–INA/Aetna v. Hagerman–Shambaugh* (1985), Ind.App., 473 N.E.2d 1033, 1036. "A document is relevant to discovery if there is the possibility the information sought may be relevant to the subject matter of the action." *Id.*

Basden's complaint alleges that THRH negligently supervised Dr. Cacdac's actions and intentionally and fraudulently retained Dr. Cacdac, an allegedly unqualified physician, in order to derive financial profits from alleged unnecessary surgeries performed by Dr. Cacdac. Thus, contrary to THRH's assertions, the subject matter of Basden's action is not limited to the surgical procedures performed on Basden by Dr. Cacdac. Rather, the subject matter of Basden's action encompasses THRH's general policies and procedures for the supervision and control of privileges extended to health care providers at THRH's facilities. This court has reviewed the interrogatories and requests for production and has determined that the trial court did not abuse its discretion in finding that they were relevant to the subject matter of Basden's action, and reasonably calculated to lead to the discovery of admissible evidence. Therefore, the trial court properly ordered THRH to respond to these discovery requests.

4. This court notes, however, that Basden could request information from original sources, separate and apart from the peer review proceedings. Disclosure of original source information is not prohibited by the Peer Review Statute which provides, in part, as follows:

"Information otherwise discoverable or admissible from original sources is not to be construed as immune from discovery or use in any proceeding merely because it was presented during proceedings before such peer review committee, nor is a member, employee, or agent of such committee or other person appearing before it to be prevented from testifying as to matters within his knowledge and in accordance with the other provisions of this chapter, but the witness cannot be questioned about this testimony or other proceedings before such committee or about opinions formed by him as a result of committee hearings."
I.C. § 34–4–12.6–2(a).

In conclusion, the trial court's order is reversed to the extent it requires THRH and Giermak to provide information protected by the peer review privilege, and the trial court is affirmed to the extent it ordered THRH to respond to discovery requests that were objected to based upon only the relevance grounds and not upon the peer review privilege. This case is remanded for further action consistent with this opinion.

Reversed in part, and affirmed in part, and remanded.

Costs assessed fifty percent (50%) against appellant, fifty percent (50%) against appellee.

NEAL and HOFFMAN, JJ., concur.